**THE PITET FIRM, PC**
Joseph Busch III (SBN 70340)
jbusch@octrials.com
100 Bayview Circle, Suite 210
Newport Beach, CA 92660
Tel: (949) 502-7755

**HORNE SLATON, PLLC**
Sandra Slaton (*pro hac vice pending*)
slaton@horneslaton.com
6720 North Scottsdale Road, Suite 285
Scottsdale, Arizona 85253
Tel: (480) 483-2178

**DAVIS GOLDBERG GALPER, PLLC**
Lanny J. Davis (*pro hac vice pending*)
ldavis@dggpllc.com
1700 K. Street NW, Ste. 825
Washington, D.C. 20006
Tel: (202) 899-3834

Attorneys for Plaintiff, Bradford D. Lund

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BRADFORD D. LUND,

           PLAINTIFF,

v.

THE HONORABLE DAVID J. COWAN, Los Angeles County Superior Court Judge, LOS ANGELES COUNTY SUPERIOR COURT for the State of California

           DEFENDANTS.

**Case No.  2:20-cv-1894**

**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

    1.    This case involves the Plaintiff, Bradford D. Lund ("Mr. Lund"), the grandson of entertainment tycoon Walt Disney.  For the past decade, Mr. Lund has been entrapped in the probate division of the Los Angeles County Superior Court

fighting against hostile trustees to receive his beneficiary distributions from his trusts. As one of their tactics to keep Mr. Lund from receiving his trust distributions, Mr. Lund's hostile trustees, in concert with certain of Mr. Lund's estranged family members, alleged that he was incapacitated and needed a guardianship and conservatorship.  After seven years of fighting that battle in the Arizona courts, and after a 10-day bench trial, Mr. Lund was victorious in all respects and was found to have capacity, resulting in a dismissal of that case.  The disgruntled estranged family members appealed the case and the Arizona appellate court unanimously affirmed the trial court's decision.  The Arizona Supreme Court refused review, and a final Arizona judgment was filed in August, 2016.  Additionally, another California Superior Court judge found that Bradford Lund had capacity to choose successor trustees for one of his other trusts after similar allegations were previously made by Mr. Lund's hostile trustees.  In the face of these specific findings and the decade long history of litigation without any guardian ad litem, and without notice or any hearing, the Hon. David J. Cowan, on his own *sua sponte* Order to Show Cause, appointed a limited purpose guardian ad litem over Mr. Lund without any evidentiary hearing or notice.  In so doing, Judge Cowan refused to take judicial notice of the Arizona decision in the form of either judicial comity or full faith and credit.

2.     That imposition of a guardian ad litem has imposed significant constraints on Mr. Lund's liberty and property interests in violation of the 14th

**2**

Amendment, and his constitutional right to due process of law by not having any hearing.  Indeed, his attorneys (3 current and 1 former) have filed affidavits under oath which stated that Mr. Lund is, in fact, competent, and does not need any guardian ad litem – consistent with the specific findings of fact made by Judge Oberbillig in Arizona, and Judge Beckloff in California, that were completely ignored by Judge Cowan.

3.     The decision by Judge Cowan to appoint a GAL sua sponte, without a hearing, contradicting the factual and legal findings of Judge Oberbillig after a 10-day bench trial in Phoenix, Arizona, and utterly ignoring constitutional requirements of due process of law is all too reminiscent of a perspective where facts do not matter but alternative facts do, where the constitution does not matter and where the rule of law is set aside and replaced by the rule of subjective, fact-free decision-making.

4.     After a ten-day bench trial in Arizona, as explained above, on a guardianship/conservatorship petition, the Honorable Robert Oberbillig determined that Mr. Lund was not "not incapacitated," not in in need of a guardianship or conservatorship, and that "Although not his burden of proof, Bradford Lund has proven that he deserves the freedom in life to make his own choices."  (**Exhibit A**, p. 3-6).   Furthermore, the Supreme Court of Arizona specifically determined that Mr. Lund was entitled to his property and lifted all stays in the Arizona probate matter, while also denying the petition for review.

5.      In 2009, the Trustees sought to have a guardian ad litem appointed over Mr. Lund but dismissed that requested relief before it was ruled on when the parties settled.  In 2012, the Trustees sought a Cal. Evidence Code § 730 Expert to advise the court on Mr. Lund's competency.  The Trustees motion for a § 730 Expert was denied by the Hon. Mitchell L. Beckloff.

6.      In a 2013 bench trial before the Hon. Mitchell L. Beckloff, in regard to an issue of whether Mr. Lund was competent to appoint his successor trustees on one of his trusts, he was found to have capacity.  Indeed, there was no guardian ad litem appointed over Mr. Lund at any time during that California probate proceeding, nor any of the appeals following that judgment.  Specifically, Judge Beckloff determined that: "Evidence presented during the trial did not persuade the court that Mr. Lund lacked capacity to exercise his Trustee Removal Power."  (**Exhibit B**, p. 32).  Additionally, Judge Beckloff found: "The evidence did not rebut the statutory presumption that Mr. Lund had capacity to exercise the Trustee Removal Power."  (**Exhibit B**, p. 32).  Regarding the allegations that Mr. Lund was subject to undue influence, Judge Beckloff specifically found: "There is no direct evidence that Mr. Lund was unduly influenced to exercise the Trustee Removal Power."  (**Exhibit B**, p. 33).  Ultimately, Judge Beckloff specifically found: "The court finds that Mr. Lund's exercise of the Trustee Removal Power was knowing, voluntary, and intelligent."  (**Exhibit B**, p. 35).

7.     In the present California proceedings, Mr. Lund was given no notice or hearing.  Instead, without notice Judge Cowan, ordered a limited purpose guardian ad litem over Mr. Lund on the baseless and unproven allegations by the Trustees of the Sharon D. Lund Residuary Trust fbo Bradford D. Lund (the "BRT") that Mr. Lund was incapacitated, in the face of the Arizona decision and previous California decisions otherwise.  In his written order appointing the limited guardian ad litem, Judge Cowan stated that Mr. Lund had not proven his capacity, despite the statutory presumption that all persons have the capacity to make decisions and to be responsible for those acts and/or decisions.  This was not Mr. Lund's burden to overcome.  In California, and throughout the country, the statutory presumption is that all individuals have capacity and are competent, the burden is placed on the party challenging competence or capacity.  However, Judge Cowan turned that burden on its head and, again, required Mr. Lund to prove that he was competent and had capacity.

8.     The guardian ad litem has complete control over Mr. Lund's legal decisions and actions, together with interfering with Mr. Lund's right to choose his own attorneys.  Specifically, the order appointing the guardian ad litem grants to that position the following powers to: (1) "facilitat[e] a new settlement agreement"; (2) determine "whether the Court can grant Bradford's request to appoint" a trustee; (3) "provide the Court with a report on how to streamline future litigation" if a new

5

settlement is not possible; (4) determine "whether Bradford's lawyers should be disqualified due to conflict"; (5) determine "whether the Court should remove [the co-trustees of Mr. Lund's 1992 Trust] pursuant to the OSC re: removal based on their refusal to provide information regarding the Nevada Trust or any other reason"; (6) determine "whether the interim stay should be lifted" on the 1992 Trust case; (7) whether approval of the settlement could be conditioned on a court order before decanting of assets in the Nevada Trust; and (8) representing Mr. Lund "on any appeal of this order."  (**Exhibit C**, p. 18-19).

9.     Despite the lack of evidentiary basis for the deprivation of Mr. Lund's liberty, Mr. Lund was forced into the *de facto* custody of a guardian ad litem.  The statutes enacted in California permitting such a deprivation of liberty are unconstitutional because they have denied Mr. Lund any due process.  Specifically, the statutes fail to (1) require a judge to provide a party with any due process, not even a hearing, before subjecting him to the losses of liberty by appointing a guardian ad litem; (2) set effective limits for the de facto custody of a guardian ad litem, including limits on the duration; and (3) provide any post-deprivation remedy; and (4) fail to provide for a direct appellate remedy to challenge the appointment.

10.     Mr. Lund remains in the *de facto* custody of the guardian ad litem wrongly imposed on him pursuant to the unconstitutional State of California statutes. Mr. Lund's constitutional and civil rights have been violated by a public official

under color of law and thus, such actions cannot be allowed to stand in a nation of

laws, not men; in a nation that cares about the constitution and the rule of law.

Therefore, Mr. Lund brings this complaint as follows:

## JURISDICTION

11.     This action is brought pursuant to 42 U.S.C. § 1983 and Fourteenth

Amendment to the United States Constitution.  Jurisdiction is proper under 28 U.S.C.

§ 1331 and § 1343(a)(3).

12.     Pursuant to 42 U.S.C. § 1983, "in any action brought against a judicial

officer for an act or omission taken in such officer's judicial capacity, injunctive

relief shall not be granted unless a declaratory decree was violated, or declaratory

relief was unavailable."  In the present matter, declaratory relief is available and that

is the only relief requested.  *See Yellen v. Hara*, No. CV 15-00300 JMS-KSC, 2015

WL 8664200 (D. Haw. Dec. 10, 2015).

In *Yellen*, the judicial officer was named as a party and the case was not

dismissed under the *Younger* abstention doctrine of the *Rooker-Feldman* doctrine.[1]

There, the *Yellen* court stated:

> Applied here, although state proceedings are ongoing, they are not "quasi-criminal enforcement actions," nor do they "involve a state's interest in enforcing the orders and judgments of its courts." Id. This action involves

---

[1] The claims against the judge were dismissed because the plaintiff was seeking monetary damages and injunctive relief which are prevented.  In the present case, there are no damages or injunctive relief sought.

routine state-court orders appointing individuals to assist the court—guardianship, conservatorship, and Kokua Kanawai appointments. These are not orders that involve "the process by which a state 'compels compliance with the judgments of its courts.'" *Id.* (quoting *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 886 (9th Cir. 2011)). In short, *Younger* does not apply, and provides no basis for dismissal or abstention.

*Yellen*, 2015 WL 8664200 at * 7.  In the present case, this case is not a "quasi-criminal enforcement action" but similarly, involves routine state-court orders appointing an individual to assist the court.

13.     Venue is proper in the United States District Court or the Central District of California pursuant to 28 U.S.C. § 1391(b).

14.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties. Mr. Lund seeks a declaration from this Court that the laws of the State of California, as executed, are unconstitutional because Mr. Lund is "in custody" by virtue of the appointment of the guardian ad litem without due process of law.  This de facto custody of the guardian ad litem continues despite specific findings on previous occasions that Mr. Lund is not incapacitated, not in need of a guardian or a conservator, together with under oath declarations from his attorneys that Mr. Lund is, in fact, competent.  The ongoing unwillingness to correct the custody of the guardian ad litem that Mr. Lund has been placed in, is a continuing deprivation of Mr. Lund's due process rights.

PARTIES

15.     Plaintiff, Bradford D. Lund, is and was, at all times relevant herein a citizen of the United States, a resident of Clark County, Nevada, and involved in ongoing litigation in the Los Angeles County Superior Court.

16.     Defendant, the Honorable David J. Cowan, is a judge of the Los Angeles County Superior Court for the State of California.

17.     Defendant, the Los Angeles County Superior Court, is a division of the State of California.

18.     Defendants are named only in their official capacities.  Defendants were acting and continue to act under color of state law in the deprivation of Mr. Lund's constitutionally protected rights.  Both Defendants, Judge Cowan and the Los Angeles County Superior Court, are hereinafter referred to collectively as "Judge Cowan".

19.     L. Andrew Gifford, Robert L. Wilson, Douglas Strode, and First Republic Trust Company ("FRTC") (collectively, the "Trustees"), as Trustees of the Sharon D. Lund Residuary Trust fbo Bradford D. Lund; as Trustees of the Sharon D. Lund Residuary Trust fbo Michelle A. Lund, FRTC as former trustee of the Bradford Disney Lund 1992 Trust, and Sharon D. Lund 1986 Irrevocable Trust fbo Bradford D. Lund; and FRTC as a Co-Trustee of the Lillian B. Disney Trust fbo Bradford D. Lund are not named as defendants or real parties in interest because there is no

9

pecuniary interest.  Mr. Lund is not seeking any damages or any monetary interest at all.

STATEMENT OF FACTS

**Background Facts:**

20.     Mr. Lund is a forty-nine-year-old man who is the heir to the fortune of entertainment and media pioneer Walt Disney.  The litigation in California began on October 20, 2009 and the litigation in Arizona began six days later on October 26, 2009.

21.     Mr. Lund unquestionably prevailed in the Arizona Matter and benefited from detailed and specific findings of fact and conclusions of law made by Judge Oberbillig.  The contents of those findings are attached as **Exhibit A**, and specifically incorporated by reference as if set forth in full herein.  Judge Oberbillig found in pertinent part:

> 1)     Petitioners have failed to meet their burden of proof by clear and convincing evidence or even by a preponderance of the evidence as to the request for a Limited Guardianship.
>
> 2)     Petitioners have failed to meet their burden of proof by a preponderance of the evidence to establish a Limited Conservatorship or other less restrictive alternatives.
>
> 3)     Bradford Lund has established by clear and convincing presently, in 2016, he is not incapacitated, an appointment of a guardian is not necessary to provide for his demonstrated needs, and Bradford Lund's needs are currently being properly met by less restrictive means.

4)      The Court-Appointed Independent Neuropsychologist Dr. Daniel Blackwood testified that "Mr. Lund is not in need of a guardian or conservator as of May 3, 2011."

5)      Court Investigator Robert Segelbaum testified that as of June 2011, he had "ambivalent" feelings whether a guardianship and/or conservatorship were warranted. He deferred to Dr. Blackwood, although he did conclude "there does not appear to be any reason to secure a guardianship at this time," referring to as of June 2011.

6)      The Petitioners presented no credible expert testimony that Bradford Lund needs a limited guardian or conservator.

7)      Bradford Lund's treating physicians, Dr. Duane and Dr. Chung, were the only neurologists who have examined Bradford Lund since May 2011 and both testified Bradford Lund was not incapacitated and not in need of a guardian or conservator to effectively manage his personal care, medical, or financial matters so long as Bradford Lund continued to rely on the advice of trusted family members and professional advisors.

8)      Petitioners concede Bradford Lund has the capacity to manage all of his activities of daily living.

9)      Michelle Lund testified in the Superior Court of California on December 17, 2013, that Bradford Lund is "competent" and "he ultimately had the capacity to decide what he would want to do in a business sense."

[…]

12)      Bradford Lund is able to effectively manage his medical care, estate, and other affairs. Bradford Lund has consistently demonstrated that he makes mature and appropriate financial decisions. He properly relies and has relied upon the advice of his father, Sherry Lund, Rachel Schemitsch, Robert Rosepink, Douglas Wiley, and others as any reasonable person of substantial wealth would do in making important decisions involving his personal affairs, estate, and financial matters.

[…]

15)      Bradford Lund, now 45, has been described by Petitioners and the other witnesses as a very "frugal" man with his money.

16)     There was no credible testimony Bradford Lund has ever wasted or dissipated any property or funds at any time in his life.

17)     The weight of the credible evidence does not support Petitioners' claim that Respondents are out to get Bradford Lund's funds or have wrongfully benefitted from or improperly used his funds.

18)     There was undisputed evidence Bradford Lund's father has assisted Bradford Lund and Michelle Lund in making collectively over $100 million in profits.

19)     As stated by estate planning attorney specialist Douglas Wiley, the Nevada trust is an excellent method for Bradford Lund to protect his assets from both creditors and predators.  Further, the trust is set up to preclude Bradford Lund from wasting or dissipating his assets.

[…]

22)     Although not his burden of proof, Bradford Lund has proven that he deserves the freedom in life to make his own choices.

(**Exhibit A**, p. 3-6).

22.     The California Litigation had a thirteen-day bench trial in Los Angeles Superior Court Case Nos. BP119205 (*In re The Sharon D. Lund Residuary Trust fbo Bradford D. Lund*); BP120814 (*In re The Bradford Disney Lund 1992 Trust*); and BP129815 (*In re The Sharon D. Lund 1986 Irrevocable Trust fbo Bradford D. Lund*). There was no guardian ad litem appointed in any of the California Litigation at all. Ultimately, Judge Beckloff made the following findings on the only issue presented that had anything to do with competence or capacity.

a.     "Evidence presented during the trial did not persuade the court that Mr. Lund Lacked capacity to exercise his Trustee Removal Power. While there are legal proceedings pending in Arizona to conserve Mr.

Lund, such pending litigation alone is insufficient to establish that Mr. Lund lacked mental capacity to exercise his Trustee Removal Power." (**Exhibit B**, p. 32)

b.     "The evidence did not rebut the statutory presumption that Mr. Lund had capacity to exercise the Trustee Removal Power.  While capacity must be considered in the context of the decision being made, the evidence before the court did not establish that Mr. Lund lacked capacity such that he could not make independent decisions in connection with the Trustee Removal Power or that he did not understand the rights, duties, responsibilities, risks, benefits, and reasonable alternatives involved in or affected by a decision to exercise the Trustee Removal Power."  (**Exhibit B**, p. 32).

c.     "There is no direct evidence that Mr. Lund was unduly influenced to exercise the Trustee Removal Power."  (**Exhibit B**, p. 33).

23. Ultimately, Judge Beckloff found:

After having considered the evidence, the court cannot find that Mr. Lund's free will was overborne by another.  Mr. Lund elected to exercise his Trustee Removal Power with the advice and assistance of his counsel.  Mr. Lund's exercise is not without articulated reasons.  While Mr. Lund is dependent upon those around him, the evidence is insufficient to establish that Mr. Lund is not acting of his own will and desire on the issue.  The court finds that Mr. Lund's exercise of the Trustee Removal Power was knowing, voluntary, and intelligent.

(**Exhibit B**, p. 35).

**The Current California Litigation:**

24.     The California Litigation continued and now involves five separate case numbers:  BP055495 (*In re The Lillian B. Disney Trust fbo Bradford D. Lund*); BP119204 (*In re The Sharon D. Lund Residuary Trust fbo Michelle A. Lund*); BP119205; BP129814; BP129815 (collectively, the "Lund Trust Matters").

13

25.     On December 19, 2018, Judge Cowan, on his own motion, issued two separate orders to show cause.  One of those orders to show cause involved whether the court should appoint a guardian ad litem for Mr. Lund (the "OSC").  Judge Cowan specifically set a hearing on the order to show cause to be heard on February 7, 2019.[2]  Both Mr. Lund and the opposing party, Mr. Lund's trustees, filed Responses to Judge Cowan's OSC on February 28, 2019.

26.     The parties of the Lund Trust Matters all agreed to continue the OSC hearing in order to engage in mediation in an effort to settle the case, or portions of the case.  The OSC hearings were continued with Judge Cowan's blessing pursuant to his subsequently issued order for the parties to attend mediation. No guardian ad litem was appointed over Mr. Lund prior to mediation.

27.     Mr. Lund, without any guardian ad litem or alternate decision-maker, together with the Co-Trustees of the Bradford Disney Lund 1992 Trust, on the one hand, and the Trustees, on the other hand, engaged in a two-day in-person mediation on March 25 and 26, 2019, before the Hon. Leslie Green, a retired Los Angeles County Superior Court Probate Judge.  Additionally, the parties engaged in another approximately two weeks of negotiations, assisted by Judge Green (ret.), which resulted in a complete and total global Settlement Agreement.  Mr. Lund signed the

---

[2] That date was continued to a later date given the parties stipulation for extensions of time for the filing of the briefing, but the hearing on the OSC never actually occurred.

settlement agreement himself, and the Trustees accepted his signature, without any guardian ad litem of any kind appointed over Mr. Lund.

28.     Pursuant to the Settlement Agreement, the agreement was presented to Judge Cowan for approval which would finally put an end to over a decade of litigation between the parties to the Lund Trust Matters.  For the first time in a decade all of the parties stood before the Los Angeles County Superior Court, and in a unified voice asked for the approval of the Settlement Agreement which would finally end all of the litigation.

29.     Judge Cowan refused to approve the Settlement Agreement in its entirety and only approved portions of the same including the substantial payment of $14.5 million in termination fees to the adverse party, the Trustees.

30.     On September 27, 2019, without any notice or hearing, Judge Cowan issued an Order appointing a limited purpose guardian ad litem, Margaret Lodise, over Mr. Lund.

31.     In California the appointment of a guardian ad litem is not an appealable order. (*See In re Marriage of Caballero*, 27 Cal. App. 4th 1139, 1149 (1994), *In re Hathaway's Estate*, 111 Cal. 270, 271 (1896)).  Mr. Lund had no pre-deprivation remedy or any post-deprivation remedy to remove the limited purpose guardian ad litem.

32.     On October 17, 2019, Mr. Lund timely filed a Petition for Writ of Mandate with the California Court of Appeal, Second District, regarding the improper appointment of a guardian ad litem.  On November 14, 2019, the California appellate court summarily denied Mr. Lund's writ petition.  On November 20, 2019, Mr. Lund timely filed a Petition for Review with the Supreme Court of California challenging the summary denial of the writ petition.  On November 26, 2019, the California high court summarily denied Mr. Lund's petition for review.

33.     Mr. Lund exhausted his state court remedies regarding the imposition of a limited purpose guardian ad litem being appointed over him.

34.     The imposition of the limited guardian ad litem without any hearing has resulted in a deprivation of Mr. Lund's liberty and property interests.  Specifically, the limited guardian ad litem, was ordered to do the following:

a.      "[F]acilitat[e] a new settlement agreement" between the parties of the Lund Trust Matters;

b.      Determine "whether the Court can grant Bradford's request to appoint" a trustee;

c.      If a new settlement is not reachable, "provide the Court with a report on how to streamline future litigation";

d.      Determine "whether Bradford's lawyers should be disqualified due to conflict";

**16**

e.    Determine "whether the Court should remove [the co-trustees of Mr. Lund's 1992 Trust] pursuant to the OSC re: removal based on their refusal to provide information regarding the Nevada Trust or any other reason";

f.    Determine "whether the interim stay should be lifted" on the 1992 Trust case;

g.    Determine whether approval of the settlement could be conditioned on a court order before decanting of assets in the Nevada Trust; and

h.    Represent Mr. Lund "on any appeal of this order."

(**Exhibit C**, p. 18).

35.    The above actions by the guardian ad litem represent a deprivation of not only Mr. Lund's liberty interests, but also relegates Mr. Lund into the de facto custody of guardian ad litem.  Indeed, the guardian ad litem is, in fact, has already begun to engage in renegotiation of the settlement with the Trustees.  (**Exhibit D**, p. 3:15-19).

36.    Judge Cowan has deprived Mr. Lund of his liberty and property. The Constitution imposes upon him the State's concomitant duty to see that no deprivation occurs without adequate procedural protections.  In this case, Judge

Cowan failed to assure that Mr. Lund was accorded due process prior to a loss of liberty or property.

**The 1992 Trust Litigation**

37.     On or about, November 5, 1992, Mr. Lund began the Bradford Disney Lund 1992 Trust (the "1992 Trust").

38.     Mr. Lund is the settlor of the trust and the trusts sole lifetime beneficiary.  The 1992 Trust was to pay income to Mr. Lund not less often than quarterly.  The 1992 Trust also required mandatory birthday distributions when Mr. Lund achieved the age of 35, 40, and 45.

39.     The 35th Birthday Distribution was for one-third of the trust estate.  The 40th Birthday Distribution was for one-half of the trust estate.  The 45th Birthday Distribution was for the remaining balance of the trust estate.  The only exception to the Birthday Distributions was that if the trustees of the trust determined that Mr. Lund "has not theretofore demonstrated the maturity and financial ability to manage and utilize such funds in a prudent and responsible manner."

40.     When Mr. Lund was 44 years old, and just before he was about to turn 45 years old, the trustee of the 1992 Trust, Mutual of Omaha Bank, determined that Mr. Lund should receive his 35th and 40th Birthday Distributions.  Mutual of Omaha determined in their discretion that the exception, set forth above in paragraph 27, to the distribution did not apply.

41.     At the same time, and in the same petition, Mutual of Omaha indicated that it would make the decision on the 45th birthday distribution after Mr. Lund turned 45, on June 5, 2015.

42.     Michelle Lund (Mr. Lund's twin sister), the contingent beneficiary of the 1992 Trust, filed an objection to Mutual of Omaha's Petition for Instructions. Michelle's objection was based on her allegation that Mr. Lund did not meet the Distribution Standard, together with the fact that there was, at that time, a protective proceeding pending in Arizona.

43.     Prior to the decision by the Court on Mutual of Omaha's petition and Michelle's objection, Mr. Lund removed Mutual of Omaha as trustee, and appointed as replacements, Sherry Lund and James Dew to serve as trustees of the 1992 Trust.[3]

44.     On September 6, 2016, the Hon. Roy L. Paul, among other things, ordered, "The New 1992 Trustees shall hold the Remaining 1992 Trust Assets in California and no portion thereof shall be distributed, disbursed, encumbered, or otherwise transferred without further order of the Court, with only the following two exceptions: (a) the New 1992 Trustees shall continue to make all Unitrust payments otherwise owing to Brad from the 1992 Trust; and (b) the New 1992 Trustees may use 1992 Trust assets to pay attorneys' fees and costs, trustees' fees and costs, and

_____

[3] Mr. Lund also appointed himself and then resigned from the role as trustee of the 1992 Trust.

19

other administrative expenses of the 1992 Trust, without prejudice to any party's right to challenge such expenses."

45.     The reason for Judge Paul's interim stay was of because of Michelle Lund's objections in the 1992 Trust Case which have since been settled.

46.     On September 27, 2018, Mr. Lund and Michelle settled all issues in the 1992 Trust case.  Included in the settlement was that Michelle would not "object to the distribution of the proceeds of the 1992 Trust by the Co-Trustees Sherry and Dew to Bradford in accordance with his directives."

47.     The settlement between Mr. Lund and Michelle Lund put all issues, except objections to accountings to rest.  FRTC, as a former trustee, was merely a purported creditor seeking outstanding attorneys' fees, but have never filed an affirmative pleading seeking any fees.  Judge Paul's order required a holdback of $600,000.  Mr. Lund and Mutual of Omaha Bank settled regarding the 1992 Trust On February 13, 2019.

48.     Mr. Lund moved to lift the stay on the 1992 Trust in October, 2019.  The Hon. David J. Cowan denied that Motion and required Mr. Lund to submit the issue as a petition.  The Co-Trustees of the 1992 Trust filed the Petition to Lift Interim Stay on January 8, 2019.

49.     On September 27, 2019, the court effectively again denied Mr. Lund the right to his own personal property even though there are no longer any issues

regarding the 1992 Trust except purported creditor issues by FRTC (former trustee of the 1992 Trust) which have a specific holdback.

50.     Mr. Lund has been denied his due process and access to his own personal assets by the California Superior Court.  Despite the resolution of all issues in the 1992 Trust except the objections to the accountings filed by FRTC, the California Superior Court refuses to remove its order preventing Mr. Lund from receiving his own assets.

**Full Faith And Credit Clause**

51.     The Full Faith and Credit Clause of the United States Constitution reads in pertinent part: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

52.     Despite the constitutional requirement that Full Faith and Credit shall be given to the judicial acts, records, and proceedings of every other state, Judge Cowan ignored the 2016 Arizona Judgment and appointed a limited guardian ad litem over Mr. Lund.

53.     Judge Cowan specifically ignored the findings made in an Arizona Superior Court In & For Maricopa County case involving Mr. Lund.  In *In re The*

*Guardianship and Conservatorship of Bradford D. Lund*, Maricopa County Case No. PB2009-002244, specific and detailed findings of fact and conclusions of law were made, that were unanimously affirmed by the Arizona Court of Appeals, Division One. Judge Cowan specifically ignored the findings that Mr. Lund was competent, had capacity, was not in need of any guardian or conservator, and "Although not his burden of proof, Bradford Lund has proven that he deserves the freedom in life to make his own choices."

54.    As stated above, Mr. Lund incorporates by reference all of the findings of fact and conclusions of law made by Judge Oberbillig in the 2016 Arizona Judgment, attached as **Exhibit A**, as if set forth in its entirety herein.

55.    The Trustees and the Arizona Petitioners were in privity because they had a common interest agreement between them. The privity between the Trustees and Arizona Petitioners applies because a party is adequately represented for purposes of the privity rule "if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action." *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1070 (Cal. App. 1998). Having a common interest agreement between the Trustees and Arizona Petitioners required them to have the same legal interest. *See OXY Res. California LLC v. Superior Court*, 115 Cal. App. 4th 874, 891 (2004) ("For the common interest doctrine to attach, most courts seem to insist that the two parties

have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.'"").  Therefore, the Arizona Petitioners and the Trustees were in fact, in privity with each other.

56.     While the Trustees were not parties to the Arizona Litigation, their interests were represented and advocated for by the Arizona Petitioners' attorneys. One of the Trustees, Andrew Gifford, was a star witness for the Arizona Petitioners, and his counsel, Hayward Kaiser, was present for Gifford's testimony.  Also, it is Mr. Lund's position Trustees assisted (behind the scenes) with the strategy, planning, and initiation of the case.  Indeed, most of the exhibits submitted by the Petitioners were taken verbatim from the 2013 California trial.

57.     Judge Oberbillig made detailed findings of fact and conclusions of law that Mr. Lund had capacity and was not in need of a guardian or conservator, as quoted above in paragraph 21.  (**Exhibit A**, p. 3-6).

58.     Based upon the Judgment entered by Judge Oberbillig, the Arizona litigation was dismissed and there was no guardian or conservator appointed over Mr. Lund.

59.     The Arizona Petitioners (Kristen Olson and Michelle Lund) appealed the trial court's findings of fact and conclusions of law.  On December 26, 2017, the Arizona Court of Appeals unanimously affirmed the 2016 Arizona Judgment and

issued a 17-page memorandum decision.  Included in the Arizona appellate court's

discussion of the evidence is the following statement:

> Andrew Gifford, one of the trustees of the Sharon D. Lund Residuary
> Trust for the benefit of Bradford, testified that Bradford had the capacity
> to sign documents in 2005 and 2007 establishing, among other things, a
> fee arrangement to appoint a successor trustee in 2007, and to consent to
> an increase in the compensation for the management of his personal
> accounts in 2005.

(**Exhibit E**, p. 11 ¶ 25). The detailed memorandum decision includes specific analysis

of the guardianship, conservatorship, assessment of Mr. Lund, and guardian ad litem

issues, among other things.  Ultimately, the Arizona Court of Appeals found: "We

affirm the superior court's judgment denying Olson's petition for guardianship and

conservatorship." (**Exhibit E**, p. 29 ¶ 82).

60.     The Arizona appellate court in determining the guardian ad litem issue

stated: "Substantial support exists in the record showing Bradford's interests were

being represented by independent counsel and his representation was adequate under

A.R.S. § 14-1408(A).  Substantial evidence also exists demonstrating that Bradford is

not incompetent.  Consistent with the court's findings of fact and conclusion of law,

the record shows he understood the nature of the proceedings and was able to assist in

the presentation of his case.  Therefore, the substantial evidence shows Bradford was

not in need of a GAL under A.R.S. § 14-1408 or Rule 17 of the Arizona Rules of

Civil Procedure, we find no abuse of discretion in the court's dismissal of the GAL."

(**Exhibit E**, p. 28 ¶ 79).

61.     On January 25, 2018, the Arizona Petitioners filed a petition for review in the Supreme Court of Arizona together with an emergency motion to stay the distribution of assets from the Walt Disney Trust.  On February 9, 2018, the Arizona high court denied the emergency motion to stay.  On August 29, 2018, the Supreme Court of Arizona denied the petition for review.

62.     On September 27, 2019, Judge Cowan appointed a limited purpose guardian ad litem over Mr. Lund and ignored the findings made in California.  Judge Cowan ignoring the findings made in the Arizona Superior Court violated the Full Faith and Credit clause of the United States Constitution.

**The Striking Of The Objection To The Judge**

63.     On October 17, 2019, Mr. Lund filed a Verified Statement Objecting To Judge David Cowan Pursuant To Code of Civil Procedure § 170.1. *See* **Exhibit F**, incorporated herein. Throughout the hearings in this case, Judge Cowan prejudged and predetermined the issues. As one example only, Judge Cowan stated: "Do I want to give 200 million dollars, effectively, to someone who may suffer, on some level, from Down syndrome?  The answer is no."  Judge Cowan would not retract that statement even after on of Mr. Lund's counsel indicated that there was an indisputable DNA test proving that Mr. Lund did not have Down syndrome.

64.     On October 24, 2019, Judge Cowan, the very same judge that Mr. Lund objected to, filed an order striking his Statement of Disqualification pursuant to Code of Civil Procedure § 170.4(b).

65.     Mr. Lund was denied his due process through the allowance of the California Code of Civil Procedure § 170.4(b) which allowed Judge Cowan to strike the objection from the record.

**Count One**

(Due Process Violation of the Fourteenth Amendment to the United States Constitution)

66.     Mr. Lund hereby incorporates paragraphs 1 through 65 above as if fully set forth herein.

67.     The guardian ad litem statutes of the State of California are unconstitutional in that they (1) vest unlimited discretion in the trial judge to subject a person to a long term, indefinite, de facto custody; (2) fail to provide Mr. Lund with procedural due process prior to taking away his liberty and property; (3) fail to provide Mr. Lund with any procedural safeguards, including but not limited to, a means to have the trial court's decisions reviewed in a timely manner; and (4) fail to provide Mr. Lund with any post-deprivation rights of direct appeal to remove the appointment.

68.     The Defendants' failure to give Full Faith and Credit to the 2016 Arizona Judgment is a violation of Mr. Lund's due process.

69.     The Defendants' acts through Judge Cowan in appointing the guardian ad litem and refusing to release Mr. Lund from the appointment constitute violations of Mr. Lund's rights pursuant to the Fourteenth Amendment to the United States Constitution not to be deprived of Life, Liberty, or Property without due process of law and to enjoy the equal protection of the laws of the State of California.

70.     The Defendants' acts through Judge Cowan in ignoring the 2016 Arizona Judgment constitute violations of Mr. Lund's constitutional right to Full Faith and Credit together with violations of his rights pursuant to the Fourteenth Amendment to the United States Constitution not to be deprived of Life, Liberty, or Property without due process of law.

**Count Two**

(Declaratory Judgment)

71.     Mr. Lund hereby incorporates paragraphs 1 through 70 above as if fully set forth herein.

72.     The above facts demonstrate that Defendants have acted in violation of Mr. Lund's constitutional rights pursuant to the Fourteenth Amendment to the Constitution.

73.     Mr. Lund is entitled to declaratory judgment holding that Defendants' actions placing Mr. Lund in long term, indefinite custody of the guardian ad litem, without a hearing and in the face of Judge Beckloff's ruling, Judge Oberbillig's ruling, the Arizona Court of Appeals affirmation of Judge Oberbillig's ruling, and the sworn declarations from Mr. Lund's counsel that they have "directly observed that [Mr. Lund] was able to understand the nature and consequences of proceedings and to assist [them] in [their] representation of him at all times."

74.     Mr. Lund is further entitled to a declaratory judgment holding that the laws of the State of California that permit the appointment of a guardian ad litem over a competent adult for any period of time without a hearing are unconstitutional.  *See Weaver by Weaver v. New York City Employees' Ret. Sys.*, 717 F. Supp. 1039, 1044 (S.D.N.Y. 1989); *Thomas v. Humfield*, 916 F.2d 1032, 1034 (5th Cir. 1990).

**Count Three**

(Declaratory Judgment)

75.     Mr. Lund hereby incorporates paragraphs 1 through 74 above as if fully set forth herein.

76.     In California the burden of proof is on the party asserting that someone is incompetent and needs a guardian ad litem.

77.     Judge Cowan reversed the burden of proof and required Mr. Lund to prove that he was not incompetent.  (**Exhibit C**, p. 19-28).

78.    Mr. Lund is entitled to declaratory judgment holding that the above actions by Judge Cowan, forcing Mr. Lund to prove his competency, violated Mr. Lund's  due process.  *See Weaver by Weaver*, 717 F. Supp. at 1044.

**Count Four**

(Declaratory Judgment)

79.    Mr. Lund hereby incorporates paragraphs 1 through 78 above as if fully set forth herein

80.    The above facts demonstrate the Defendants have acted in violation of Mr. Lund's constitutional rights pursuant to the Full Faith and Credit Clause found in Article IV, § 1 of the United States Constitution.

81.    Mr. Lund is entitled to declaratory judgment holding that Defendants' actions in ignoring the findings of fact and conclusions of law on Mr. Lund's competence and capacity are binding on all courts in all states.

82.    Mr. Lund is further entitled to a declaratory judgment holding that Full Faith and Credit Clause applies to the Arizona Judgment.

**Count Five**

(Declaratory Judgment)

83.    Mr. Lund hereby incorporates paragraphs 1 through 82 above as if fully set forth herein.

84.     Pursuant to 14th Amendment all parties are entitled to have a neutral and detached decision maker preside over their litigation.  Judge Cowan, the subject of the objection, ordered those objections stricken from the record.  It is obvious that Judge Cowan is not neutral and detached regarding this issue.

85.     The above facts demonstrate that Judge Cowan's striking of Mr. Lund's Verified Statement objecting to him on the grounds of bias and prejudice is a violation of Mr. Lund's his right to due process pursuant to the 14th Amendment to the Constitution.

86.     Mr. Lund is entitled to a declaratory judgment holding the California Code of Civil Procedure, § 170.4(b) is unconstitutional and violates due process.

**WHEREFORE**, Plaintiff, Bradford D. Lund respectfully requests this Court to:

1.     Issue a declaratory judgment finding that the conduct of Defendants, as described above, has violated and continues to violate Mr. Lund's rights pursuant to the Fourteenth Amendment to the Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2.     Issue a declaratory judgment finding that the statutes of the State of California which allow a court to appoint a guardian ad litem over Mr. Lund, without notice or a hearing, deprives him of his liberty and property in violation of the 14th Amendment.

3.      Issue a declaratory judgment finding that Judge Cowan ignoring the findings of fact and conclusions of law included in the 2016 Arizona Judgment is unconstitutional and a violation of the Full Faith and Credit Clause of the United States Constitution.

4.      Issue a declaratory judgment finding that Judge Cowan refusing to lift the stay on the 1992 Trust is an unconstitutional deprivation of property to Mr. Lund without due process of law.

5.      Award Mr. Lund any and all other relief that is just and appropriate under the circumstances.

**Respectfully submitted** this 27th day of February, 2020.

THE PITET FIRM, PC


By:/s/ Joseph P. Busch, III
   Joseph P. Busch, III, Esq.
   Attorney for Plaintiff
   Bradford D. Lund